IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:12-cv-21118-KMM

HTC LELEU FAMILY TRUST,

    Plaintiff,

vs.

PIPER AIRCRAFT, INC.,

    Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendant's Motion to Dismiss (ECF No. 13). Plaintiff filed a Response (ECF No. 14) and Defendant filed a Reply (ECF No. 15). The Motion is now ripe for review. UPON CONSIDERATION of the Motion, the Response, the Reply, the pertinent portions of the record, and being otherwise fully advised in the premises, this Court enters the following Order.

## I. BACKGROUND[1]

This is an action arising from Plaintiff's purchase of an aircraft manufactured by Defendant. Plaintiff is a trust established under and in accordance with the laws of South Africa. Defendant is a corporation organized under the laws of Delaware with its principal place of business in Florida. Placo (Pty) Ltd. ("Placo") is an international dealer of aircrafts manufactured by Defendant. Placo is organized under the laws of South Africa with its principal place of business in South Africa.

---

[1] The facts herein are taken from Plaintiff's Complaint (ECF No. 1), Defendant's Motion to Dismiss, Plaintiff's Response, and Defendant's Reply. All facts are construed in a light most favorable to Plaintiff.

1

On April 23, 2008, Plaintiff entered into an agreement with Placo to purchase a Piper Meridian aircraft manufactured by Defendant. The agreement, which was subject to the approval by the management of both Defendant and Placo, specified that the aircraft was to be new with a standard factory warranty. The agreement, however, was never approved by either company and never took effect.

After learning of Plaintiff's interest in purchasing an aircraft, Defendant invited Herwig Tillo Cornelius Leleu ("Leleu"), a trustee of Plaintiff, to visit its manufacturing facility in Vero Beach, Florida. Defendant extended this invitation because it had another Piper Meridian aircraft (the "Aircraft") that was the same model that Plaintiff previously attempted to purchase.

On November 17, 2008, Leleu visited Defendant's facility in Florida in order to examine the Aircraft. During his visit, Leleu had discussions about the Aircraft with several representatives and officials of Defendant, including James Bass, Defendant's President and Chief Executive Officer. Plaintiff alleges that Bass "expressly represented to and promised Leleu that the Aircraft would give Leleu many years of flying satisfaction." Compl., ¶ 16. On November 18, 2008, an unnamed official of Defendant (the "Official") unlocked the Aircraft and allowed Leleu to inspect it. Leleu alleges that the Official affirmed that all "snags with the Aircraft had been corrected." Compl., ¶ 17. The Official then gave Leleu a tour of Defendant's facility. During the tour, the Official showed Leleu an open wing section and allowed Leleu to inspect the construction and sealing of the wing tanks. Leleu asked if the same method of sealing tanks was used on the Aircraft and the Official answered in the affirmative. Plaintiff also alleges that other representatives of Defendant "expressly represented to and promised Leleu that the Aircraft was in [n]ew condition, entirely without defects, and that no problems had arisen during the course of the manufacturing process." Compl., ¶ 19.

Plaintiff subsequently purchased the Aircraft and it was delivered to Plaintiff on December 18, 2008 in Germiston, South Africa. The Parties, however, did not enter into a written contract for the sale of the Aircraft. Plaintiff alleges that "the management of both Placo and [Defendant] approved the sale of the Aircraft and thereby entered into a sales contract with [Plaintiff] at the time of delivery of the Aircraft." Compl., ¶ 24. Plaintiff further alleges that the terms of the contract were essentially the same as the terms of the agreement to purchase the previous aircraft manufactured by Defendant. Additionally, Leleu, as Plaintiff's representative, signed a Limited Warranty at Placo's office in Germiston, South Africa which was forwarded to Defendant.

After minimal use of the Aircraft, Leleu observed a fuel leak under the right wing of the Aircraft during a flight on January 11, 2009. It was subsequently discovered that a manufacturing error occurred in the use of a sealant on the Aircraft's wing at Defendant's facility. Due to the seriousness of the leak, the Aircraft could not be flown. Plaintiff alleges that it immediately informed Defendant of the defect and that it was canceling the agreement. Defendant refused to honor Plaintiff's request for restitution of the purchase price and compensation for the damages incurred.

On March 20, 2012, Plaintiff filed the instant action. Plaintiff alleges that the fuel leak resulted from Defendant's errors in the use of a sealant when Defendant unsuccessfully attempted to repair fuel leaks discovered in the manufacturing process. Plaintiff claims that at no time did Defendant or Placo "inform it of any defects or repair attempts relating to the fuel tanks or the sealants." Compl., ¶ 35. In its Complaint, Plaintiff alleges claims of fraud in the inducement (Count I); fraudulent concealment (Count II); negligent misrepresentation (Count

III); breach of contract (Count IV); breach of express warranties (Count V); and a violation of the Magnusson-Moss Act, 15 U.S.C. § 2301(6) (Count VI).

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984). On a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. SEC v. ESM Grp., Inc., 835 F.2d 270, 272 (11th Cir. 1988). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "But where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" Id. at 1950. A complaint must also contain enough facts to indicate the presence of the required elements. Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1302 (11th Cir. 2007). However, "[a] pleading that offers 'a formulaic recitation of elements of a cause of action will not do.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002).

## III. ANALYSIS

Defendant's Motion seeks to dismiss Count I for fraud in the inducement,[2] Count II for fraudulent concealment,[3] and Count III for negligent misrepresentation.[4] Defendant argues that these counts should be dismissed because (1) the claims are barred by Florida's economic loss rule; (2) the alleged misstatements are mere puffery; and (3) the fraud allegations are not pled with sufficient particularity to meet the requirements of Federal Rule of Civil Procedure 9(b). See Def. Mot. to Dismiss, at 3. This Court addresses each of these arguments in turn.

### A. Economic Loss Rule

Under Florida law, in the absence of personal injury or property damage, "the economic loss rule operates to bar tort claims for purely economic loss in cases involving a defendant who is a manufacturer or distributor of a product or where the parties have contractual privity." Topp,

---

[2] "Under Florida law, to state a cause of action for fraud in the inducement, a party must establish the following elements: 1) a false statement regarding a material fact; 2) the person making the statement knew or should have known that the representation was false; 3) intent by the person making the statement to induce action or reliance; and 4) injury suffered because of justifiable reliance on the representation." Rubesa v. Bull Run Jumpers, LLC, No. 09-CV-81107, 2010 WL 376320, at *3 (S.D. Fla. Jan. 26, 2010) (citations omitted).

[3] For a claim of fraudulent concealment, a party must allege "(1) a false statement concerning a material fact; (2) knowledge by the person making the statement that the representation is false; (3) the intent by the person making the statement that the representation will induce another to act on it; (4) reliance on the representation to the injury of the other party . . . . [and (5)] a duty to disclose." Friebel v. Paradise Shores of Bay Cnty., LLC, No. 10-CV-120RSEMT, 2012 WL 913247, at *3 (N.D. Fla. Mar. 19, 2012) (internal citations omitted).

[4] "In order to state a claim for negligent misrepresentation, a plaintiff must allege (1) there is a misrepresentation of material fact; (2) the party making the misrepresentation either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representation was made with the intent to induce another to act on the misrepresentation; and (4) the plaintiff suffered a resulting injury while acting in justifiable reliance upon the misrepresentation." Tyco Safety Prods. Canada, Ltd. v. Abracon Corp., No. 08-CV-80604, 2008 WL 4753728, at *2 (S.D. Fla. Oct. 28, 2008) (citations omitted).

5

Inc. v. Uniden Am. Corp., 513 F. Supp. 2d. 1345, 1348 (S.D. Fla. 2007) (citation omitted).[5] In Indemnity Insurance Company of North America v. American Aviation, Inc., the Florida Supreme Court explained that the economic loss rule applies in two different circumstances. 891 So.2d 532, 536 (Fla. 2004). First, "[i]f the parties have contractual privity, and a claim for tort simply restates a claim for breach of contract, the tort claim is barred." Id. (citing Eclipse Med., Inc. v. Hydro-Surgical Instruments, Inc., 262 F. Supp. 2d 1334, 1354 (S.D. Fla. 1999)). Second, the economic loss rule "bars a tort cause of action where a product is involved, when the product damages only itself, and the losses are purely economic." Saxon Fin. Group, Inc. v. Rath, No. 11-CV-80646, 2012 WL 3278662, at *5 (S.D. Fla. Aug. 9, 2012) (citation omitted).[6]

"'The test to determine if the economic loss rule applies is to ask if the fraud alleged is an act of performance or in a term of the bargain." Tyco Safety Prods. Canada, Ltd., 2008 WL 4753728, at *3 (quoting D&M Jupiter, Inc. v. Fridopfer, 853 So.2d 485, 487 (Fla. Dist. Ct. App. 2003)). If the fraud is in a term of the bargain, it is not barred by the economic loss rule; however, if the alleged fraud relates to an act of performance, then it is barred by the economic loss rule. Allen v. Stephan Co., 784 So.2d 456, 458–59 (Fla. Dist. Ct. App. 2000) (stating that with claims of fraudulent inducement and negligent misrepresentation, "where the fraud complained of relates to the performance of the contract, the economic loss doctrine will limit

---

[5] The economic loss rule evolved because "'contract principles are more appropriate than tort principles to resolve purely economic claims.'" Eye Care Intern., Inc. v. Underhill, 92 F. Supp. 2d 1310, 1314 (M.D. Fla. 2000) (citing Fla. Power & Light Co. v. Westinghouse Elec. Corp., 510 So.2d 899, 900 (Fla. 1987)). Additionally, "parties to a contract have allocated the economic risks of nonperformance through the bargaining process." Topp, Inc., 513 F. Supp. 2d. at 1348. "A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than he originally made." Id. (citing Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc., 891 So.2d 532, 536 (Fla. 2004)).

[6] Since Plaintiff alleges that the Parties were in contractual privity, this Court will analyze the claims under the economic loss rule regarding contractual privity. See e.g., Compl., ¶ 77.

6

the parties to their contractual remedies.") (citing Greenfield v. Manor Care, Inc., 705 So.2d 926 (Fla. Dist. Ct. App. 1997)). This can be determined by looking at whether "the action is based upon fraud independent of the contractual breach." Id., at 458 (citations omitted).[7] Additionally, since HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238, 1239 (Fla. 1996), courts in Florida have found that "'statements or misrepresentations made to induce an individual to enter a contract, if later contained within the terms of the actual contract, cannot constitute a basis on which to bring the fraud claim.'" Ben-Yishay v. Mastercraft Dev., LLC, 553 F. Supp. 2d 1360, 1370 (S.D. Fla. 2008) (quoting Flamenbaum v. Orient Lines, Inc., No. 03-CV-22549, 2004 WL 1773207, at *7 (S.D. Fla. July 20, 2004)).

Here, Defendant's obligation under the alleged contract was to deliver the Aircraft to Plaintiff. Plaintiff alleges that the representations of Defendant's agents formed the basis for the condition of the Aircraft upon delivery under their agreement. See Compl., ¶ 77. All of the allegations that Plaintiff uses to support its claims for fraud in the inducement, fraudulent concealment, and negligent misrepresentation relate to whether Defendant adequately performed under the contract—that is, whether Defendant breached the agreement by providing a defective Aircraft. See e.g., Premix–Marbletite Mfg. Corp. v. SKW Chems., Inc., 145 F. Supp. 2d 1348, 1358 (S.D. Fla. 2001) (stating that "when the actions complained of relate directly to the subject matter of the parties' agreement, or are interwoven with the agreement, no independent tort exists and the economic loss rule applies"); Hotels of Key Largo, Inc. v. RHI Hotels, Inc., 694 So.2d 74, 78 (Fla. Dist. Ct. App. 1997) (stating that when the misrepresentation is "inseparable from the essence of the parties' agreement, the economic loss rule applies"). Thus, the claims in

---

[7] "'[A] truly independent cause of action for fraudulent misrepresentation, where the ability of one party to negotiate fair terms is undermined by the other's fraudulent behavior, is not barred by the economic loss rule.'" Rubesa, 2010 WL 376320, at *4 (quoting Hotels, 694 So.2d at 77).

7

these counts are indistinguishable from the claims in the breach of contract claim and are not independent torts. See Rubesa, 2010 WL 376320, at *4–5 (dismissing claims for fraud in the inducement and negligent misrepresentation as barred by the economic loss rule where a purchaser sued a merchant because a horse purchased was not suitable for competition as previously represented by the merchant).

The conclusion that Plaintiff's claims are not independent causes of action can be supported since the facts necessary to prove that Defendant breached the Parties' agreement are the same facts necessary to prove all of Plaintiff's tort claims. See Exportaciones Textiles, S.A. De C.V. v. Orange Clothing Co., No. 09-CV-22967, 2010 WL 1257710, at *3 (S.D. Fla. Mar. 29, 2010). Indeed, Plaintiff's breach of contract claim is based upon the representations by Defendant's agents that also form the basis for Plaintiff's other claims. See Compl., ¶¶ 16-19.[8] For example, Plaintiff alleges that "[Defendant] and it agents and representatives made affirmations of fact and promises relating to the Aircraft and which became part of the basis of the bargain of the . . . [a]greement. Those affirmations of fact and promises constituted express warranties." Compl., ¶ 77. To further support the breach of contract claim, Plaintiff states that "[Defendant] breached the [e]xpress [w]arranties because, at the moment of the delivery of the Aircraft, the Aircraft did not possess the qualities affirmed and promised by [Defendant] and its agents and representatives." Compl., ¶ 78. Additionally, Plaintiff alleges the same rationale for its breach of express warranties claim. See Compl., ¶ 93; see also Pavletic v. Bertram Yacht, Inc., No. 11-CV-60484, 2011 WL 3475394, at *6 (S.D. Fla. Aug. 9, 2011) (dismissing claims for

---

[8] All of these claims relate to the quality of the Aircraft which goes to the heart of the Parties' agreement. See Allen, 784 So.2d at 458 (stating that a claim is barred if its "injury was one which flowed from the failure to perform the heart of the agreement") (citing Hotels of 694 So.2d 74 (Fla. Dist. Ct. App. 1997); Straub Capital Corp. v. L. Frank Chopin, P.A., 724 So.2d 577 (Fla. Dist. Ct. App. 1998)).

8

fraud in the inducement and negligent misrepresentation under the economic loss rule because none of the acts were "independent from the acts alleged in the breach of warranty claim"). Thus, the facts necessary for the tort claims based upon the representations are "interwoven" with those necessary for Plaintiff's breach of contract claim and the tort claims are not independent causes of action. HTP, Ltd., 685 So.2d at 1240.[9]

Thus, even though Plaintiff argues that its claims are distinct, "one cannot avoid the economic loss rule by merely labeling a claim as fraud in the inducement [or other similar tort claims;] the fraud must be separate and distinct from the breaching party's performance of the contract." Rubesa, 2010 WL 376320, at *4 (quoting Medalie v. FSC Secs., Corp., 87 F. Supp. 2d 1295, 1305 (S.D. Fla. 2000)).[10] Here, Plaintiff's claims for fraud in the inducement, fraudulent concealment, and negligent misrepresentation are all based upon Defendant's defective performance under the alleged agreement.[11] Therefore, this Court finds that Count I, II, and III of Plaintiff's Complaint are barred by the economic loss rule.[12]

---

[9] Although not dispositive, this Court notes that "the potential recovery under either type of claim—fraud or breach of contract—would be" identical. Orange Clothing Co., 2010 WL 1257710, at *3. Under either action, Plaintiff would recover the purchase price of the Aircraft and any incidental damages. See Compl., at 9, 10, 12, 14, 15, 16 (seeking rescission or cancellation of the contract and other damages for every count in Plaintiff's Complaint).

[10] See also Maxcess, Inc. v. Lucent Tech., Inc., No. 04-CV-204ORL31DAB, 2005 WL 6125471, at *6 (M.D. Fla. Jan. 5, 2005) (stating that with "regard to a large commercial transaction covered by a contract that purports to embody the parties' entire understanding, if a party asserts a tort claim bearing directly on the quality . . . of goods that are an object of the transaction, the situation is directly and substantially aligned with context and policies that gave rise to the [economic loss] rule") (citations omitted).

[11] This Court will not grant Plaintiff leave to amend these counts because any attempt to revise these allegations would likely be barred by the economic loss rule. See Rubesa, 2010 WL 376320, at *4–5 (dismissing with prejudice a plaintiff's claims for fraud in the inducement and negligent misrepresentation under the economic loss rule because any amendment would be futile).

[12] Since this Court finds that Plaintiff's claims are barred by the economic loss rule, this Court declines to address Defendant's other arguments that Counts I–III should be dismissed.

## IV. CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendant's Motion to Dismiss (ECF No. 13) is GRANTED. Counts I, II, and III of Plaintiff's Complaint are DISMISSED WITH PREJUDICE.

DONE AND ORDERED in Chambers at Miami, Florida, this 17th day of October, 2012.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All counsel of record